UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CURLY HERNANDEZ,                                       :

        Petitioner,                          :        05 Civ. 4046 (GWG)

  -v.-                                                 :        <u>OPINION AND ORDER</u>

GARY FILION, Superintendent of                         :
Correctional Facility,
                                                         :
        Respondent.
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Curly Hernandez, proceeding <u>pro se</u>, brings this petition for a writ of habeas corpus challenging his conviction in the Supreme Court of the State of New York, New York County, for Criminal Possession of a Controlled Substance in the First Degree (New York Penal Law ("N.Y.P.L.") § 220.21(1)). Hernandez was tried <u>in absentia</u> by a jury, found guilty, and sentenced to a term of imprisonment of fifteen years to life. On March 28, 2005, Hernandez was resentenced to a term of eight years' imprisonment under amendments to the so-called "Rockefeller Drug Laws." Hernandez was released on parole on May 13, 2005. The parties have consented to the disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the petition is denied.

I. <u>BACKGROUND</u>

    A. <u>The Suppression Hearing</u>

On September 21, 1992, the trial court held a suppression hearing <u>in absentia</u> to determine whether cocaine recovered by the officers who arrested Hernandez was legally seized. The evidence at that hearing was as follows:

On March 11, 1992, shortly after 3:00 p.m., Curly Hernandez was walking west on 140th Street in Manhattan, approaching Amsterdam Avenue, when he was spotted by two police officers patrolling the area in a marked car. (See H. 6-8).[1] The officers, Michael Kennedy and Matthew Barrett, were in a police car in a "very heavy narcotics area," and were stopped at the light at 140th and Amsterdam when they saw Hernandez walking "stiffly" and wearing a "heavy winter coat." (See H. 10, 12). While they did not see any bulges in the coat, they testified that it was very bulky, and that Hernandez's arms were not swinging normally but were "braced against his waist." (See H. 10, 17-18).

As Hernandez turned north on Amsterdam Avenue, he looked over his shoulder and made eye contact with Kennedy, who was driving the police car. He continued to look over his shoulder at the officers, and then entered the College Restaurant, an establishment where Kennedy had made many previous narcotics arrests. (See H. 8, 11-12). As Hernandez entered, Kennedy saw him reach into his jacket. (See H. 11). Kennedy then pulled up to the curb in front of the restaurant, at which point Hernandez "spun around and came back out[.]" (See H. 8). Kennedy also saw a man in the restaurant "making a [waving] motion," as though telling Hernandez to leave. (See H. 8).

Upon leaving the restaurant, Hernandez took a couple of steps north on Amsterdam Avenue, and then ran twenty or thirty feet before entering another restaurant. (See H. 8-9). At this point, the officers got out of their squad car and ran after Hernandez. They lost sight of him for "just seconds," but saw him reach into his jacket as he entered the second restaurant. (See H.

---

[1] "H." refers to the transcript of the pre-trial suppression hearing. "T." refers to the trial transcript. Both are contained within Docket #4.

2

9, 14, 37). As the officers entered the second restaurant, they saw Hernandez standing in the back near a garbage can. He pulled out a large yellow package and dropped it in the can. (See H. 9). Kennedy retrieved the package, which was later determined to contain more than two pounds of cocaine. Kennedy and Barrett then arrested Hernandez. (See H. 9, 46; see also T. 143).

B. The Denial of the Motion to Suppress

The court denied the motion to suppress orally on the record. (See T. 86). On October 29, 1992, after the completion of the trial, the court issued a written decision which has not been made part of the record but which has been quoted and cited in detail in other papers. See Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated July 25, 2005 (Docket #5) ("Opp. Mem."), at 5; Brief for Respondent, dated October 2003 (reproduced as Ex. M to Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated July 25, 2005 (Docket #6) ("Opp. Decl.")) ("Resp. Br."), at 6-8 (citing written ruling on suppression hearing ("Suppression Ruling")).

The court found that the cocaine had been legally seized because the officers had been justified in approaching Hernandez in the first place to investigate his "unusual" actions in a heavy narcotics area. Resp. Br. at 6. The court found that Kennedy, an experienced narcotics officer, had "a founded suspicion that criminal activity was afoot." See id. at 7 (citing People v. DeBour, 40 N.Y.2d 210 (1976)). The pursuit of Hernandez was also legal, since the officers had a right to inquire of him before he ran. See id. Finally, the court found the officers had probable cause to arrest Hernandez after finding what appeared -- and was later confirmed -- to be a large quantity of cocaine in a package he had just discarded. Moreover, Hernandez's decision to throw the package in the trash was an intentional "independent act involving a calculated risk" rather

3

than a "spontaneous reaction to a sudden and unexpected confrontation with the police." See id. at 8 (quoting Suppression Ruling at 13 (citing People v. Boodle, 47 N.Y.2d 398, 404 (1979))).

C. Trial and Sentencing

On September 24, 1992, Hernandez's trial in absentia began. On September 25, the jury found Hernandez guilty of Criminal Possession of a Controlled Substance in the First Degree (N.Y.P.L. § 220.21(1)). (See T. 319). On October 19, 1992, Hernandez was sentenced to an indeterminate prison term of fifteen years to life. See Opp. Mem. at 7. On November 12, 1992, Hernandez's counsel filed a notice of appeal of his conviction. See 440 Motion ¶ 11. Briefing on that appeal did not occur until July 2002. See Section I.E below.

D. Motion to Vacate Conviction

Hernandez remained a fugitive until March 1996, when he was arrested on a misdemeanor drug charge and began serving his sentence. See Opp. Mem. at 7. On October 28, 1998, he filed a motion to vacate his conviction, pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. See Motion and Affidavit in Support of Motion to Vacate Judgment and Set Aside Sentence, dated October 28, 1998 (reproduced as Ex. A to Opp. Decl.) ("440.10 Motion"). In that motion, Hernandez argued that his Brady rights were violated when the People failed to disclose "exculpatory material" regarding the corruption investigation of Officers Kennedy and Barrett, who had both since left the force as a result of the investigation. See Memorandum of Law in Support of 440 Motion, dated October 3, 1998 (reproduced as Ex. B to Opp. Decl.), at 1-9; Decision and Order, dated October 5, 2000 (reproduced as Ex. G to Opp. Decl.) ("2000

4

Decision"), at 4.[2] The People argued that there was no knowledge of corruption in the 30th Precinct -- where Kennedy and Barrett were stationed -- until nearly a year after the conclusion of Hernandez's trial. See Memorandum of Law in Opposition to Defendant's Motion to Vacate Judgment Pursuant to CPL § 440.10, dated July 27, 1999 (reproduced as Ex. C to Opp. Decl.), at 1. The trial court ordered the filing of affidavits and a hearing to determine at what point the People had "serious information concerning the corrupt activities of Officers Kennedy and Barrett." See Decision and Order, dated December 22, 1999 (reproduced as Ex. D to Opp. Decl.), at 4-5 (emphasis in original). He also appointed Hernandez counsel. See id. at 6.

In accordance with the trial court's order, the People submitted affidavits from two Assistant District Attorneys involved in the corruption investigation, stating that the investigation of the 30th Precinct began in September 1992, and that the first complaint concerning Kennedy and Barrett was received in February 1993. See Affidavit of William Burmeister, dated January 27, 2000 (reproduced as Ex. E to Opp. Decl.) ("Burmeister Aff."), ¶ 2; Affirmation of Emery E. Adoradio, dated February 14, 1995 (reproduced as Ex. F to Opp. Decl.) ("Adoradio Aff."), ¶ 2. After following up on this complaint, the Official Corruption Unit ("OCU") found there was "not enough credible evidence" to prosecute Kennedy and Barrett. See Adoradio Aff. ¶ 9. The affidavits also stated that by the fall of 1993, "additional and significant information" regarding corruption at the 30th Precinct came to light, leading to the arrest of 33 officers, including Kennedy, who was arrested in March 1994 for assaulting an undercover officer. See Burmeister Aff. ¶ 2; Adoradio Aff. ¶¶ 12-13. However, the OCU "possessed no derogatory information

---

[2]The Court has added page numbers to this and other unpaginated decisions of the trial court.

5

regarding Officers Matthew Barrett or Michael Kennedy" at the time of Hernandez's arrest, trial, and sentence.  See Burmeister Aff. ¶ 4.

On October 5, 2000, the court ruled that a hearing was unnecessary, and that the material Hernandez requested was "not Brady material," since the state had not received the allegations of misconduct until "well after" Hernandez's trial and sentencing.  See 2000 Decision at 3 (emphasis in original).  Further, the court rejected Hernandez's claim of "newly discovered evidence," ruling that "'it must be shown that the new evidence creates a reasonable probability of a more favorable verdict,'" and that "'generally, evidence which would merely impeach testimony at trial would not be sufficient.'"  See id. at 5 (quoting People v. Vasquez, 214 A.D.2d 93, 102 (1st Dep't 1995), appeal denied, 88 N.Y.2d 943 (1996)).

On January 16, 2003, the Appellate Division denied Hernandez's application for leave to appeal the denial of his 440.10 motion, and denied his alternative application to consolidate that motion with his direct appeal.  See Certificate Denying Leave, dated January 16, 2003 (reproduced as Ex. J to Opp. Decl.).

### E. Direct Appeal

In his direct appeal, Hernandez argued to the Appellate Division that the police had lacked reasonable suspicion of criminal activity when they approached him, and thus that the drugs they recovered should have been suppressed.  See Defendant-Appellant's Brief, dated July 2002 (reproduced as Ex. K to Opp. Decl.), at 9-15.  On June 7, 2003, Hernandez filed a supplemental pro se brief arguing that Kennedy had committed perjury during the suppression hearing by testifying that he had reasonable suspicion Hernandez was involved in criminal activity.  See Supplemental Brief for Defendant-Appellant, dated June 7, 2003 (reproduced as

6

Ex. L to Opp. Decl.), at 5-14.  On January 6, 2004, the Appellate Division rejected these arguments and affirmed Hernandez's conviction.  People v. Hernandez, 3 A.D.3d 325 (1st Dep't 2004).  On March 19, 2004, the Court of Appeals denied Hernandez's application for leave to appeal.  People v. Hernandez, 2 N.Y.3d 741 (2004).

F. Resentencing

On February 10, 2005, following the passage of amendments to the "Rockefeller Drug Laws," see N.Y.P.L. § 60.08, Hernandez filed a resentencing application  See Opp. Mem. at 13. On March 28, 2005, he was resentenced to a term of eight years' imprisonment with five years' "supervised release."  See id.  He was released on parole on May 13, 2005.  See id. at 13-14.

G. The Instant Petition

Hernandez timely filed the instant pro se petition for habeas corpus relief on April 2, 2005.  See Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus, filed April 2, 2005 (Docket #1) ("Petition") (attaching typewritten pages).  In his petition, Hernandez raises the same grounds for relief that he raised on his direct appeal and in his 440.10 motion.  Specifically, he argues that (1) Kennedy and Barrett did not have reasonable suspicion of criminal activity; (2) Kennedy committed perjury by testifying at the suppression hearing and at trial that he did have reasonable suspicion; and (3) prosecutors failed to disclose exculpatory material regarding the investigation of Kennedy and Barrett.  See Petition ¶ 13 and attachment.

II. APPLICABLE LEGAL PRINCIPLES

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

7

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citation omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be adjudicated "on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, Rosa v. Murray, 126 S. Ct. 215 (2005).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief

8

"simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

Finally, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

## III. DISCUSSION

### A. Suppression Resulting from Allegedly Illegal Arrest (Claims One and Two)

In his first claim for habeas relief, Hernandez argues that "the police officer did not have a reasonable suspicion of criminal activity," and thus that the seizure of the package was illegal. See Petition ¶ 13 and attachment. In his second claim, Hernandez argues that Kennedy "committed perjury" by testifying at the suppression hearing and the trial that he had reasonable suspicion of criminal activity. Id. ¶ 13(b). The Appellate Division held that the record supported the credibility determinations of the trial court, and that "the totality of [the officers'] observations gave rise to a founded suspicion that criminal activity was afoot." Hernandez, 3 A.D.3d at 325.

Because the only federal issue raised by the first claim is that Hernandez was the subject of an unreasonable seizure under the Fourth Amendment, the claim is barred by Stone v. Powell, 428 U.S. 465 (1976). Under Stone, a habeas petitioner is not entitled to relief if the state courts

provided him with "an opportunity for full and fair litigation" of a claim under the Fourth Amendment. Id. at 482. Rather, a habeas petitioner's Fourth Amendment claims may be reviewed only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

New York provides such a corrective procedure in the form of a suppression hearing. See C.P.L. § 710.10 et seq.; Capellan, 975 F.2d at 70 n.1 ("'[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'") (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Thus, only the second part of the Gates test is applicable. Hernandez, however, makes no claim that he was precluded from using New York's suppression hearing procedure -- and, indeed, he was afforded that procedure here. The Second Circuit has squarely held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72.

Hernandez's second claim -- that the officers committed perjury during the suppression hearing -- does not avoid the bar of Stone v. Powell. Hernandez's perjury claim seeks to attack

the outcome of the suppression hearing, and that attack does not fit within either of the exceptions to Stone. Thus, the allegation that perjury occurred during the hearing does not mean that New York State provided Hernandez with "no corrective procedures at all" to redress the alleged Fourth Amendment violations. Capellan, 975 F.2d at 70. Obviously, Hernandez was free to make any arguments he wished during the hearing to attack the credibility of the officers and, had he not absconded, was free to testify as to his own version of his events. Nor can it be said that the alleged perjury caused Hernandez to be "precluded from using" the suppression hearing mechanism. See id. Thus, Stone v. Powell bars Hernandez's claim regarding perjury during the suppression hearing.

In any event, the evidence in the record would not allow an attack on the suppression ruling even if it could be considered by this Court. Here, both the trial court and the Appellate Division found that the officers were, in fact, credible. See 3 A.D.3d at 325; Resp. Br. at 2. Such determinations of fact are entitled to a presumption of correctness that can only be overturned by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001). The evidence in the record most favorable to Hernandez -- other than his own assertions that the officers were lying -- is the People's concession that Kennedy was charged with assault and official misconduct. See Adoradio Aff. ¶¶ 12-13. Hernandez concedes, as he must, that "there is no valid proof that all members of the NYPD who testified are perjurers." See Petition ¶ 13(b). Obviously, these allegations do not provide the "clear and convincing evidence" necessary to rebut the state courts' factual determinations.

B. <u>Brady Claim</u>

Hernandez's third claim is that the state failed to disclose potentially exculpatory evidence of the police corruption investigations. <u>See</u> Petition ¶ 13(c). Specifically, Hernandez asserts that the officers' alleged corruption "involved conducting illegal seizures, stolen property, and use of their power to arrest, to coerce bribes, steal drugs and resell them," and that if such information had been available to him during the suppression hearing or at trial, he could have used it to impeach the officers' testimony. <u>See</u> Petition ¶ 13(c).

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." To establish a <u>Brady</u> violation, a defendant must show three things: the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>accord</u> <u>United States v. Rivas</u>, 377 F.3d 195, 199 (2d Cir. 2004).

While a prosecutor can be found to have suppressed evidence "even if the evidence is 'known only to police investigators and not to the prosecutor,'" <u>United States v. Coppa</u>, 267 F.3d 132, 140 (2d Cir. 2001) (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 438 (1995)), here, the trial court made a factual finding that the "information regarding all of the allegations of misconduct against [Kennedy and Barrett] was obtained by the People . . . <u>well after the defendant's arrest, trial, and conviction</u>." <u>See</u> 2000 Decision at 3 (emphasis in original). That finding was supported by affirmations from two Assistant District Attorneys involved in the investigation of the 30th Precinct, to the effect that such investigation did not begin until September 1992, and that the

earliest official complaint regarding Kennedy and Barrett dated from February 1993. See Adoradio Aff. ¶ 2; Burmeister Aff. ¶ 2.

This factual finding is "presumed to be correct" and can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Leka v. Portuondo, 257 F.3d at 98. Hernandez has presented no evidence to rebut the state court's finding that the investigation into Kennedy and Barrett's actions did not begin until "well after" Hernandez's trial was over. Because the allegedly exculpatory material was not available until after Hernandez's trial, the trial court could properly have concluded that the information was "perforce not Brady material." 2000 Decision at 3 (emphasis in original); see Coppa, at 140 ("the government's obligations under Brady may be thought of as a constitutional duty arising before or during the trial of a defendant"). Inasmuch as Hernandez has failed to establish one of the components of the Brady test -- that the State in fact suppressed the allegedly exculpatory evidence either willfully or inadvertently, Strickler, 527 U.S. at 282 -- Hernandez's Brady claim must fail.

## Conclusion

Hernandez's petition is denied. Because Hernandez has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the judgment would not be taken in good faith.

Dated: November 29, 2005
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Curly Hernandez
111 Mt. Hope Place, Apt. 1D
Bronx, New York 10453

Luke Martland
Assistant Attorney General
120 Broadway
New York, New York 10271

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Curly Hernandez
111 Mt. Hope Place, Apt. 1D
Bronx, New York 10453

Luke Martland
Assistant Attorney General
120 Broadway
New York, New York 10271